# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **KHALILAH MUHAMMAD, ex rel.,** | ) | |
| **K.M., a minor** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07 C 5495** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | **Magistrate Judge Morton Denlow** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Khalilah Muhammad ("Claimant") brings this action on behalf of her son, K. M. ("K.M."), a minor, and seeks reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") benefits. This case presents two main issues: (1) whether the ALJ properly laid a logical bridge for his conclusion that K.M. was not disabled; and (2) whether the ALJ's credibility finding regarding Claimant's testimony was patently wrong. For the following reasons, the Court grants in part and denies in part Claimant's motion for summary judgment and remands the case to the Commissioner for further proceedings consistent with this opinion.

# I. BACKGROUND FACTS

## A.      Procedural History

Claimant applied for SSI benefits on behalf of K.M., a minor child, on September 29, 2003, alleging a disability onset date of August 21, 2003.  R. 102-104.  The Social Security Administration ("SSA") denied her application on November 26, 2003.  R. 36-39.  Claimant then filed a request for reconsideration, which was denied on June 28, 2004.  R. 40-50.  Subsequently, Claimant requested a hearing.  R. 30.

On October 26, 2006, Administrative Law Judge ("ALJ") Percival Harmon presided over a hearing at which Claimant appeared with her attorney and her son.  R. 374-421.  On October 27, 2006, the ALJ issued a decision finding Claimant was not entitled to SSI because Claimant was not disabled under the Social Security Act.  R. 11-24.  Specifically, the ALJ found that K.M. did not "have an impairment or combination of impairments that result in either 'marked' limitation in two domains of functioning or 'extreme' limitation in one domain of functioning."  R. 24.

Claimant then filed for a review of the ALJ's decision to the Appeals Council.  R. 10.  Claimant submitted additional evidence including medical records from 2004 to 2006 and Individualized Education Program ("IEP") records from 2005 to 2006.  R. 7.  The Appeals Council denied Claimant's request on October 27, 2007.  R. 4-6.  Therefore, the ALJ's decision became the final decision of the Commissioner.  Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.     Hearing Testimony – October 26, 2006**

**1.     ALJ**

The ALJ received additional evidence at the hearing including a) a report from K.M.'s school from July 2006; b) a report of K.M.'s progress in pre-school during 2005 to 2006; and c) an assessment log.  R. 377.

**2.     Edward Grossman – Claimant's attorney**

Edward Grossman, Claimant's attorney, delivered an opening statement.  R. 381-383. Mr. Grossman asserted that K.M. exhibited "marked" speech impairment for a closed period of time during 2003 and 2004.  R. 382.  Mr. Grossman contended that K.M.'s speech delays in combination with K.M.'s motor skill delay was sufficient for a closed period of SSI benefits in 2003 and 2004.  R. 382.  However, Mr. Grossman acknowledged that school records showed that K.M. was "more or less age appropriate" at the time of the hearing.  R. 382.  Furthermore, although K.M. was still a little bit behind his age group, he was not markedly limited in any domain.  R. 382.

**3.     K.M.  – Claimant's Minor Son**

At the time of the hearing, K.M. was five years old.  R. 376.  He was able to identify his date of birth as the first of October.  R. 383.

**4.     Khalilah Muhammad – Claimant**

 Claimant first noticed that K.M. had a problem with his speech when he turned a year old and would not say any words. R. 389.  He could say "mom" but would call everybody

"mom." R. 390. When K.M. was one to two years of age, he would point toward something he wanted or grab Claimant's hand and take her toward the object. R. 395-396.

When K.M. was two or three years old, he would pick up coins from the floor by scooping them up with his hand instead of his fingers. R. 400-1. At the time of the hearing, K.M. had problems buttoning, unbuttoning and zipping his pants. R. 394. He also could not tie his shoes or button his shirt. R. 397.

In the past, K.M. could not hold a pencil properly. R. 395. At the time of the hearing, K.M. was beginning to write his first and last name with someone guiding his hand. R. 395. He was not able to color within lines at age four but could do so at the time of the hearing. R. 395, 402.

K.M. received home therapy at age two for speech and development. R. 393, 409. K.M. began school at three and could say his own name at age two or three. R. 390, 399. At the time of the hearing, K.M. he could recite the alphabet and sing "Happy Birthday." R. 397. He attended a "special" school and was able to communicate with his teachers. R. 389.

## C.    Medical Evidence

### 1.    University of Illinois at Chicago Medical Center

K.M. visited the University of Illinois at Chicago Medical Center ("UIC Medical Center") beginning in January 2002 for well child care visits and to treat various ailments including a skin condition. R. 198-292. In January 2002, K.M. came in with a rash on his scalp and body and was treated for eczema. R. 260-262. In July 2002, K.M. was diagnosed

with atopic dermatitis[1] and a treatment plan was recommended. R. 258. A report indicates that K.M.'s severe atopic dermatitis was well controlled in April 2003. R. 217. Claimant has not argued that K.M.'s skin condition caused "marked" limitation in any domain. Therefore, this Court will not address this issue.

K.M. visited the UIC Medical Center for a series of visits in 2003 and 2004. Records from January 2003 indicate that K.M. was not speaking three to six words with meaning. R. 207-208. During a well child visit in August 2003, the record notes: "Patient [K.M.] states Ma, has no other words." R. 223. A well child visit from March 2004 indicated that K.M.'s speech delay was improving. R. 235. K.M. could say fifteen to twenty words but did not use two to three words in sentences. *Id.*

In August 2003, Katie Arbataitis, MA, a speech language pathologist, tested K.M. using the Rossetti Infant-Toddler Language Scale ("RITLS"). R. 198-201. She noted that K.M.'s receptive language skills (ability to comprehend and process language) fell primarily within the fifteen to eighteen-month age group while his expressive language skills fell within twelve to fifteen-month age group. R. 198, 200. K.M. exhibited a moderate delay (greater than 30 percent delay) in receptive and expressive language skills and was recommended for an Early Intervention Program. R. 201. K.M.'s motor milestones were within normal time limits. R. 198.

---

[1] Atopic dermatitis is defined as "dermatitis characterized by the distinctive phenomena of atopy, including infantile and flexural eczema." Stedman's Medical Dictionary (27th Ed. 2000). It is a synonym for atopic eczema. *Id.*

### 2. Deborah Wilson – Developmental Therapist

In September 2003, K.M. was referred for a developmental assessment due to speech concerns. R. 52. Deborah Wilson, a developmental therapist, evaluated him and recommended intervention in the areas of cognitive development and language, speech and communication development. R. 52-55. In particular, she found a 52 percent delay in expressive language, 39 percent delay in cognitive and 22 percent delay in personal/social skills. R. 52. Wilson noted that K.M. used gestures to indicate his wants and needs, and had a vocabulary of four to six words. R. 53.

With regard to gross motor skills, K.M. was able to run ten feet without falling and walk up and down stairs. R. 53. As to fine motor skills, K.M. was able to pick up small objects using a pincer grip. R. 53. He exhibited 17 percent delay in both gross and fine motor skills. R. 52.

Six months later, in March 2004, Wilson conducted another evaluation. R. 66, 294. She concluded that K.M. was delayed in cognitive functioning by 21 percent, in personal development by 31 percent, in receptive language by 34 to 31 percent and in expressive language by 38 to 34 percent. R. 66-68, 294-296. Wilson noted that K.M. could match simple geometric forms but had a much shorter attention span than other children his age. R. 66-67, 294-295. In terms of his motor skills, Wilson reported a 17 percent delay in his gross motor skills and a 34 to 31 percent delay in his fine motor skills. *Id.*

### 3. Margaret Mizera – Physical Therapist

In September 2003, Margaret Mizera evaluated K.M. using the Peabody Developmental Motor Scales II (PDMS II) test.  R. 55.  Mizera found that K.M. was unable to demonstrate several age-appropriate advanced gross motor skills.  R. 56.  In particular, she found delays in stationary (eleven-month-level), locomotion (eighteen-month-level) and objective manipulation areas (sixteen-month-level).  R. 55.  This delay made K.M. eligible for Early Intervention Services.  R. 56.

### 4. Sherry Rainge-Hester – Speech-Language Pathologist

Sherry Rainge-Hester evaluated K.M. using RITLS in September 2003.  R 57.  She found a 37 to 50 percent delay in his language comprehension and expression and a 27 to 37 percent  delay in pragmatics and play skills.  R. 59.  Due to greater than 30 percent delay in one or more areas of development, K.M. was eligible for Early Intervention Services.  R. 59.

In March 2004, Rainge-Hester again evaluated K.M..  R. 61, 297.  She noted that K.M. had made significant progress since he started receiving developmental and speech services.  R. 64, 300.  His language skills had improved.  He used single words frequently, imitated two- and three-word phrases and used sentence-like intonational patterns.  R. 63-64, 299-300.  Rainge-Hester found a 17 to 28 percent delay in gesture and play and a 28 to 38 percent delay in language comprehension and expression.  R. 64, 300.  K.M. was still eligible for Early Intervention Services.  R. 64, 300.

### 5. Browyn E. Rains, MA & J. Tomassetti, Ph.D. – State Agency Experts

A Childhood Disability Evaluation form was prepared by State Agency non-examining personnel. R. 303-308. Browyn Rains, MA and J. Tomassetti, Ph.D., ("the State Agency experts") created this report ("the Rains report") on November 19, 2003. The Rains report relies upon Katie Arbataitis' evaluation of K.M.. R. 308. The report concluded that although K.M. had some speech and language delays, he was able to communicate with gestures and a limited vocabulary. R. 308. K.M.'s receptive language skills were at the fifteen to eighteen-month-level while his expressive language skills were at the twelve to fifteen-month-level. R. 308. Although K.M. had severe limitations, these limitations did "not meet, medically equal, or functionally equal the listings." R. 303.

In particular, the Rains report concluded that K.M. had less than "marked" limitation in the domain of acquiring and using information although he had some delays in expressive language skills. R. 305. In addition, K.M. also had less than "marked" limitation in the domain of interacting and relating with others because he was able to communicate with gestures combined with some words. R. 305. The State Agency experts found no limitations in any other domain. R. 306.

### D. School Records

K.M. was a preschooler from the time of his application on September 29, 2003 to the ALJ's denial of SSI benefits on October 27, 2006. R. 17.

### 1. Individualized Education Program ("IEP") from Chicago Public Schools

In July 30, 2004, a case manager, teachers and therapists created an Individualized Education Program ("IEP") for K.M. R. 70. This program noted that K.M.'s articulation was intelligible and appeared age-appropriate. R. 72. He required the services of a special education teacher because of developmental delay and speech/language impairments. R. 73. In addition, K.M. processed information slowly. R. 87.

An IEP from May 2006 indicated that K.M. still had developmental delay and speech impairments and required special instruction on fine motor skills. R. 158-159. However, he had improved in the areas of fine motor skills, language arts and math. R. 162-164. At that time, K.M. was dismissed from speech and language services as he met all targeted speech and language goals. R. 173-174. K.M.'s articulation was age-appropriate and he continued to make progress toward completing his special education benchmarks. R. 174. The report recommended that K.M. be placed in a general blended model program. R. 166.

### 2. Teacher's Report

In July 2006, K.M.'s teacher reported that he had made tremendous progress during the prior school year. R. 179-181. In particular, he was able to write his first and last names with adult assistance. R. 179. He was also coloring within lines and identifying upper and lower case letters with 70 percent accuracy. R. 179.

### E. The ALJ's Decision – October 27, 2006

Following a hearing, the ALJ rendered a decision denying Claimant's application for SSI. R. 11-24. The ALJ reviewed Claimant's application under the three-step sequential

evaluation process to determine whether an individual under the age of eighteen is disabled. R. 14-15; *see infra*, Part II.B (Child Disability Standard). At step one, the ALJ found that K.M. had not engaged in substantial gainful activity. R. 17. At step two, the ALJ determined that K.M. had three severe impairments: speech and language delays, fine motor delay and eczema. *Id*. At step three, the ALJ found that K.M. did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19. Thus, the ALJ proceeded to determine whether K.M. had an impairment or combination of impairments that is "functionally equal" to the listings. R. 19.

In his decision, the ALJ noted that Claimant's attorney had argued that there was a closed period of disability between ages two and three[2] due to "marked" limitations in communication and fine motor skills. R. 20. Without specifying the relevant period, the ALJ agreed that K.M. had "marked" limitations in the domain of interacting and relating with others. R. 20.

In his determination of functional equivalence, the ALJ examined the record beyond the closed period for evidence of K.M.'s performance within the six domains of functioning. R. 19-24. Finally, the ALJ concluded that K.M. had only one domain with "marked" limitation and no domain with an "extreme" limitation "for any period." R. 20. Specifically, K.M. had "marked" limitation in interacting and relating with others based on a thirty-eight

---

[2] K.M. was between two and three during the period from October 1, 2003 to October 1, 2004.

percent delay in receptive and expressive language.  R. 22.  However, he had less than "marked" limitation in the areas of moving about and manipulating objects. R. 23.  Although K.M. had "some fine motor delay", he had improved.  *Id*.  Similarly, K.M. had less than "marked" limitation in health and physical well-being because his eczema can be treated with multiple medicines.  R. 24.  Moreover, K.M. had no limitation in the areas of acquiring and using information, attending and completing tasks and the ability to care for himself.  R. 21, 23.  Thus, the ALJ concluded that K.M. does not have an impairment or combination of impairments that functionally equal the severity of the listings.  R. 24.  Finally, the ALJ concluded that K.M. was not under a disability from the date of his SSI application, September 29, 2003, to the ALJ's decision, October 27, 2006.  *Id*.

Regarding credibility, the ALJ found Claimant's testimony credible, however, her "statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible."  R. 20.  With regard to the Rains report created by the State Agency experts, the ALJ agreed with their report to the extent that it supported the ALJ's finding that K.M. was not disabled.  R. 24.  The ALJ noted, however, that he had additional evidence to consider and concluded that K.M. had "marked" limitations in interacting and relating with others.  R. 24.

## II.  LEGAL STANDARDS

### A.  Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ

becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (quoting *Perales*, 402 U.S. at 401). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539). It may not, however, re-evaluate the facts, "re-weigh [the] evidence . . . or substitute [its] own judgment for that of the Commissioner." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Thus, judicial review is limited to determining

whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.* at 368-69. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.    Child Disability Standard

When making a child disability determination, the ALJ must utilize the following procedural inquiry: 1) whether the child is engaged in substantial gainful activity; 2) whether the child has a severe impairment; and 3) whether the child meets or equals a listed impairment. 20 C.F.R. § 416.924. Under step three of a child disability inquiry, where the child is not working and has a severe impairment, the ALJ must consider whether the child's impairments meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924(a). The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person form doing any significant gainful activity. 20 CFR § 404.1525(a). If the child is not engaged in substantial gainful activity, and has a severe impairment, but the impairment does not meet or equal a listed impairment, the ALJ must assess the child's functional abilities, together with other relevant evidence, to determine whether the child is disabled. 20 C.F.R. § 416.926a.

In determining functional equivalence, the ALJ must examine the evidence of record and determine a child's level of functioning in "six domains." 20 C.F.R. § 416.926a(b)(1). The six domains include: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for

oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitation in two of the domains or an "extreme" limitation in one domain, then his impairments will functionally equal the Listings, and he will be found disabled. 20 C.F.R. § 416.926a(a).

A "marked" limitation in a domain is more than moderate but less than an extreme limitation. 20 C.F.R. § 416.926a(e)(2)(I). A "marked" limitation or combination of limitations interferes seriously with a child's "ability to independently initiate, sustain, or complete activities." *Id*. An "extreme" limitation occurs when the child's impairment interferes very seriously with his or her ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(I). When evaluating the child's disability claim, the ALJ should consider all relevant evidence from medical and non-medical sources including parents, teachers, and other people that know the claimant. 20 C.F.R. § 416.924a. The regulations also provide that school attendance and school records shall be considered. 20 C.F.R. § 416.924a(b)(7).

## III. DISCUSSION

This case presents two main issues: (1) whether the ALJ properly laid a logical bridge for his conclusion that K.M. was not disabled; and (2) whether the ALJ's credibility finding regarding Claimant's testimony was patently wrong.

## A.    The ALJ Did Not Build a Logical Bridge for his Conclusion that K.M. was Not Disabled.

During the ALJ hearing, Claimant's attorney stated that K.M. should be eligible for benefits during a closed period between 2003 and 2004. R. 382. In order to satisfy the

durational requirement, K.M.'s "marked" limitations must persist for a minimum of twelve months. *See* SSR 98-1p(VI)(E). In addition, he conceded that K.M. was not markedly limited in any domain at the time of the hearing. R. 382. Thus, the only issue before the ALJ was whether K.M. was entitled to benefits during the closed period.

In his opinion, the ALJ noted that there was an alleged closed period of benefits but did not specify the relevant dates to define the closed period. In particular, the ALJ stated:

> The child has speech and language delays, fine motor delay and eczema. His attorney argues that there was a closed period of disability during ages 2 to 3 due to "marked" functional limitations in communication (interacting and relating with others) and fine motor skills (moving about and manipulating objects). I agree only that there was a period of marked limitations in interact and relate with others, though it is now much improved. Only one marked and no extreme limitation is established. Accordingly, I find the child is "not disabled" for any period.

R. 20. From the ALJ's conclusion, it appears that he analyzed K.M.'s limitations not just within the closed period but for the entire period between K.M.'s SSI application in September 29, 2003 to the date of the ALJ's decision on October 27, 2006. R. 24. In arriving at his conclusion, the ALJ referred to medical and school records from February 2002 to May 2004. R. 17-19. Thus, these records cover an extensive period and the ALJ did not specify the evidence relevant for the analysis of K.M.'s disability during the closed period.

This Court finds that meaningful review of the ALJ's decision below is not possible without further clarification of the ALJ's analysis. To allow for meaningful review, the ALJ must adequately articulate his analysis. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th

Cir. 2007); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). Granted, an ALJ is not required to include a "complete written evaluation of every piece of testimony and evidence." *Diaz*, 55 F.3d at 308. However, the ALJ is required to build a logical bridge connecting the evidence in the record to his conclusions. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Green v. Apfel*. 204 F.3d 780, 781 (7th Cir. 2000) (ALJ failed to build a bridge from the evidence to the conclusion).

On remand, the ALJ should evaluate K.M.'s limitations based on the evidence corresponding to the closed period and clearly articulate his reasoning to explain his disability determination. Specifically, this case is being remanded because: (1) the ALJ failed to build a logical bridge to his conclusion; and (2) the ALJ failed to obtain an updated medical opinion evaluating K.M.'s limitations during the entire closed period.

## 1.     The ALJ Failed to Build a Logical Bridge for His Conclusion.

The ALJ failed to build a logical bridge for his conclusion that K.M. had less than "marked" limitation based on his motor skills delays. R. 23. In particular, Claimant contends that the ALJ did not sufficiently articulate why a 38 percent delay in speech would lead to "marked" limitation in interacting and relating with others, but a 34 percent delay in motor skills does not lead to a "marked" limitation in moving about and manipulating objects. *See* R. 22. Deborah Wilson's evaluation from March 2004 indicates that K.M. had 38 to 34 percent delay in expressive language skills and a 34 to 31 percent delay in fine motor skills. R. 67-68, 295-296. Although the ALJ relied on the former to conclude that K.M. had "marked" limitation in the domain of interacting and relating with others, he did

not explain why a similar delay in fine motor skills did not lead to "marked" limitation in another domain.

Instead, the ALJ concluded that K.M. had less than "marked" limitation in the moving about and manipulating objects domain because his delay in fine motor skills had improved. R.23. The ALJ referred to the UIC Medical Center records to support his conclusion that K.M.'s motor skills had improved. R. 23. These records cover reports from January 2002 to April 2004 and it is not clear whether there was an improvement in motor skills within the closed period. In fact, Deborah Wilson's reports show a deterioration in fine motor skills within a six month period. *Compare* R.52, *and* R. 67.

Further, the record contains additional evidence documenting K.M.'s motor skill delays. R. 56. For example, Margaret Mizera's evaluation indicates that he was unable to demonstrate several age-appropriate advanced gross motor skills at age two. R. 56. Although this Court has not determined that K.M.'s limitation in motor skills rises to the level of "marked" limitation, it is unable to conclude that substantial evidence supports the ALJ's conclusion. In addition, Claimant contends that the ALJ's finding of less than "marked" limitation in the domain of acquiring and using information was also deficient.

### 2. The ALJ Failed to Obtain an Updated Medical Opinion.

Claimant argues that because the ALJ examined additional evidence that was not considered by the State Agency experts in the Rains report, the ALJ was required to call upon a medical expert to obtain an updated opinion. In the Rains report, the State Agency experts did not examine K.M. but rely upon Katie Arbataitis' evaluation of K.M. Their

report concludes that K.M. had less than "marked" or no limitation in all six domains of functioning. R. 303-308. In contrast, the ALJ found that K.M. had "marked" limitation in the domain of interacting and relating with others. R. 22. The ALJ noted that the additional evidence before him led to a different conclusion. R. 24.

Further, the Rains report was created on November 19, 2003, a date in the middle of the closed period. To properly evaluate K.M.'s limitations over the entire closed period, the ALJ should have considered evidence following the Rains report including UIC Medical Center reports, speech evaluations from 2004, and other evidence. The ALJ failed to obtain a medical opinion covering the additional evidence from the closed period.

The ALJ's failure to obtain an updated medical opinion is particularly problematic because he did not wholly adopt the findings of the Rains report. Under SSR 96-6p, an ALJ is required to obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the administrative judge or the Appeals Council may change the State Agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p. Thus, the ALJ should have obtained an updated medical opinion to evaluate the additional evidence.

The Commissioner responds that there is no evidence that the State Agency expert's evaluation would have changed with the additional evidence. However, the evidence indicates that K.M. continued to have delays in speech and motor skills after the report was created in November 2003. Deborah Wilson and Sherry Rains-Hester concluded that K.M.

had 28 to 38 percent delay in speech skills in March 2004. R. 66-68, 294-296, 64, 300. The ALJ relied on this evidence to conclude that K.M. had "marked" limitation in interacting and relating with others domain. R. 22. Thus, the additional evidence could have led a medical expert to conclude differently.

It was not appropriate for the ALJ to evaluate the medical evidence on his own. *Murphy*, 496 F.3d at 634 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (the ALJ should not play the role of doctor and interpret medical evidence). This Court is remanding this case so that the ALJ can obtain an updated medical opinion that renders an expert opinion based on the entire closed period in the domains of moving about and manipulating objects and acquiring and using information.

**B.    The ALJ's Credibility Finding was Not Patently Wrong.**

A reviewing court will overturn an ALJ's adverse credibility determination if it is patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The Court will accord special deference to the ALJ's credibility determinations because the ALJ "is in the best position to see and hear the witness and determine credibility." *Shramek*, 226 F.3d at 811. This deference may be tempered "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (quoting *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)).

The ALJ stated: "I find the claimant's mother credible. The child's medically determinable impairments could reasonably be expected to produce the alleged symptoms,

but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." R. 20. Claimant contends that the ALJ's credibility finding of Claimant, Ms. Muhammad, is internally inconsistent and conclusory.

First, Claimant argues that if her testimony was credible with regard to K.M.'s symptoms, it should also be credible with regard to the intensity, persistence and limiting effect of the symptoms. However, this Court finds no inconsistency in this finding because the ALJ found that Claimant was credible with regard to the existence of the symptoms and not with regard to the extent of the symptoms.

Next, Claimant contends that the ALJ's credibility finding of Ms. Muhammad was conclusory, requiring reversal. SSR 96-7p requires that the ALJ articulate the reasons behind the credibility evaluations. *Giles*, 483 F.3d at 488-489. Under SSR 96-7p, the ALJ's credibility determination should be specific.

This Court finds that *Jens* is on point regarding this issue. *Jens*, 347 F.3d at 213-214. In *Jens*, the ALJ did not specify which of claimant's statements were not credible, nor did he provide any evidentiary support for the adverse credibility determination. 347 F.3d at 213. However, the Seventh Circuit held that the ALJ's credibility determination was not patently wrong because it had evidentiary support. *Id.* at 213-214. Thus, merely pointing out that the ALJ did not meet the specificity requirement does not prove that the credibility determination was not supported by substantial evidence. *Id.*

Here, the record supports the ALJ's finding that Ms. Muhammad's testimony was not credible because Ms. Muhammad made several inconsistent statements during the hearing

regarding K.M.'s speech delay. R. 389-91. Therefore, this Court affirms the ALJ's credibility finding because it was not patently wrong.

## IV. CONCLUSION

This Court remands this case because (1) the ALJ failed to build a logical bridge to his conclusion; and (2) the ALJ failed to obtain an updated medical opinion evaluating K.M.'s limitations during the entire closed period. **For the reasons set forth in this opinion, the Court grants in part and denies in part Claimant's motion for summary judgment and remands the case to the Commissioner for further proceedings consistent with this opinion.**

**SO ORDERED THIS 3rd DAY OF NOVEMBER, 2008.**

_Morton Denlow_
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
Law Offices of Barry A. Schultz
1069 Sherman Avenue
Suite 205
Evanston, IL 60201

Counsel for Claimant

Jonathan C. Haile
Assistant United States Attorney
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Jessie A. Wang-Grimm
Assistant Regional Counsel
200 West Adams Street
Suite 3000
Chicago, IL 60606

Counsel for Defendant